T.C. Memo. 2002-191


UNITED STATES TAX COURT


GEORGE W. EARNSHAW, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5221-01.                    Filed August 5, 2002.


George W. Earnshaw, pro se.

Charles M. Berlau, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined a deficiency of $3,514

in petitioner's Federal income taxes for 1998.  The issue for

decision is whether petitioner must recognize discharge of

indebtedness income as a result of settlement of his Mastercard

account with MBNA America Bank (MBNA).  Unless otherwise

indicated, all section references are to the Internal Revenue

Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Shawnee Mission, Kansas, at the time that he filed the petition in this case. Petitioner is a lawyer admitted to practice in Kansas. Petitioner filed his income tax return for 1998 using the cash receipts and disbursements method of accounting.

Prior to April 1996, petitioner had two credit card accounts with MBNA, a Mastercard account and a Visa account. On April 8, 1996, the balance due on petitioner's Visa account was transferred to his Mastercard account. On or about June 9, 1996, petitioner sent to MBNA a check for $1,000, a copy of his May 1996 statement with a handwritten notation, and a separate handwritten note. In the handwritten notation on the statement and in the handwritten note, petitioner stated: "My current balance is $29,837.61." Petitioner requested verification or correction of the balance.

On August 12, 1996, petitioner obtained a cash advance of $1,200 against his Mastercard account. The sum advanced and a $10 cash advance fee were posted to petitioner's account on August 14, 1996.

From July 20, 1996, through September 19, 1997, petitioner made the following payments on his account:

| Posting Date | Payment Amount |
|---|---|
| 7-20-96 | $1,000 |
| 10-21-96 | 800 |
| 3-14-97 | 350 |
| 4-21-97 | 350 |
| 5-22-97 | 350 |
| 6-19-97 | 350 |
| 7-19-97 | 350 |
| 8-19-97 | 350 |
| 9-19-97 | 350 |
| Total | $4,250 |

Beginning with the July 1996 statement, a total of $6,146.66 in finance charges was posted to petitioner's Mastercard account. Late fees were also posted to petitioner's Mastercard account from July 19 to December 18, 1996, and in October, November, and December 1997. Petitioner objected to some of the late fees on the ground that timely payments were made. In or before September 1997, petitioner began contesting the late fees and finance charges posted to his account. Beginning in October 1997, petitioner ceased making payments, advising MBNA that he might resume payments when a dispute over the late fees was resolved. In a letter dated January 15, 1998, MBNA offered to settle petitioner's account for a payment of $12,700 by February 1, 1998. On January 28, 1998, petitioner sent a check to MBNA in the amount of $12,700.

At the time of the settlement of petitioner's account, MBNA's records reflected a balance of $32,566.70. MBNA sent to

petitioner and to the Internal Revenue Service a Form 1099-C, Cancellation of Debt, reporting discharge of indebtedness income in the amount of $19,866.70.  On April 21, 1999, petitioner sent the Form 1099-C back to MBNA with a cover letter in which he stated, among other things:

> The debt was never a "forgiveness" of anything, but as you know a compromise of many issues of a vague, doubtful, and disputed claim.  * * *

> I stopped my payments to you after many accusations on both sides, and after a period of time, I was offered a complete settlement of the account for $17,500.  After considerable negotiations, a settlement was effected of $12,750 [sic].  This was to save us both a law suit and legal expense, as well as an equitable conclusion of your improper handling of my account.

Petitioner attached to his 1998 tax return a statement as follows:

> No amounts pursuant to the attached 1099 have been included in individual income.  The cancellation should be characterized as a compromise of a doubtful and disputed claim.  No deductions were taken for these expenditures.

Respondent determined that petitioner received cancellation of indebtedness income in 1998 in the amount of $19,866.70. Respondent also determined that petitioner had unreported interest income of $128 and adjusted petitioner's taxable Social Security income.  Petitioner did not in his petition or at trial dispute the interest or Social Security income adjustments.  He is thus deemed to have conceded them.

OPINION

Petitioner contends that he did not have cancellation of indebtedness income from his settlement with MBNA, because the settlement reflected compromise of a disputed liability. Petitioner testified at trial that he disputed the finance charges on his account because of changing interest rates charged by MBNA. Respondent contends that petitioner acknowledged as of May 1996 a balance owing to MBNA and that the amount of petitioner's Mastercard account was always liquidated.

Section 61(a)(12) includes in the general definition of gross income "income from discharge of indebtedness". Respondent relies on the discussion of this provision in Preslar v. Commissioner, 167 F.3d 1323 (10th Cir. 1999), revg. T.C. Memo. 1996-543. In Preslar, the Court of Appeals for the Tenth Circuit, to which our decision in this case is appealable, examined the history of the discharge of indebtedness income rule and the "contested liability" exception to recognition of discharge of indebtedness income. The debt in Preslar was the balance owing on a $1 million promissory note. The note had been given to a bank by the taxpayers in connection with the purchase of a ranch that was to be developed by the taxpayers. The bank permitted the taxpayers to repay the loan by assigning the installment sales contracts of purchasers of the developed property to the bank at a discount. When the payee-bank became

insolvent, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver.  The FDIC refused to accept further assignments of sales contracts as repayment.  The taxpayers ceased making payments and filed an action against the FDIC.  The action was settled after the FDIC agreed to accept $350,000 in full satisfaction of the indebtedness, on which the then balance was $799,463.  The Court of Appeals held that the contested liability doctrine did not apply because the amount of the taxpayers' debt was at all times liquidated.  The Court stated, in part:

> In addition, the Preslars' characterization of their dispute with the FDIC as the culmination of their dispute over the ranch loan is not faithful to the evidence.  The dispute with the FDIC focused only on the terms of repayment; it did not touch upon the amount or validity of the Preslars' debt.  * * *  In sum, the Preslars' underlying indebtedness remained liquidated at all times.  [Id. at 1330.]

We agree with respondent that the rationale of Preslar and similar cases applies to the balance of petitioner's Mastercard account as of the time in May 1996 that he made a $1,000 payment and acknowledged the balance of $29,837.61 before the payment.  Petitioner has not disputed that he owed reimbursement to MBNA for the $1,200 cash advance in August 1996 and the $10 cash advance fee, and those amounts also appear to be liquidated.

We do not agree with respondent, however, that Mastercard's subsequent posting of various finance charges and late payment fees to petitioner's account creates a liquidated indebtedness.

We need not address all of the implications of the Preslar opinion as to the scope of exceptions to the discharge of indebtedness income. The question in this case is whether a debt existed as asserted by respondent in the amount of $32,566.70 before the settlement between petitioner and MBNA. On the facts of this case, we do not totally agree with either party.

Petitioner argues that respondent's failure to call any witnesses from MBNA gives rise to a negative inference. Respondent was not required to call such witnesses, and the records maintained by MBNA were received in evidence as a result of the stipulation. The MBNA statements, however, standing alone, do not establish a debt between petitioner and MBNA beyond the amount that petitioner admitted in his handwritten notes on the May 1996 statement. Petitioner's testimony about the ongoing dispute is not contradicted. He explained his failure to have documents corroborating the dispute with MBNA between June 1996 and September 1997 as attributable to his disposal of those records after the dispute was resolved. The pattern of his payments, however, shows a 3-month gap between the July and October 1996 payments and almost 5 months between the October 1996 payment and a payment in March 1997. The payments made for March through September 1997 were minimal in relation to the size of the account. Petitioner objected to certain late fees on the ground that timely payments were made. Between January and

September 1997, no late fees are reflected on his account. The annual rate at which finance charges were accrued dropped from April 1997 through December 1997, according to MBNA's records. Apparently, some negotiations were going on during that time.

There is no indication that the settlement with MBNA was based on petitioner's inability to pay the amounts in dispute, and he denies that he was insolvent at the time. The record fully supports the inference that a dispute between petitioner and MBNA existed and was carried on over many months. We accept his testimony that he engaged in an ongoing dispute with MBNA that ultimately induced MBNA to compromise petitioner's account for substantially less than the balance recorded in its statements to petitioner.

As of June 1996, petitioner's undisputed balance was $28,837.61. His account increased by uncontested charges of $1,200 for a cash advance and $10 for a cash advance fee. He subsequently made nine payments totaling $4,250 and a settlement payment of $12,700. The net uncontested, liquidated balance, which we conclude should be the amount of petitioner's cancellation of indebtedness income, is $13,097.61.

Petitioner has made other arguments that have no merit. In his trial memorandum, he suggested that the amount of indebtedness canceled should be treated as "damages". Respondent infers that petitioner is suggesting that the reduction in his

debt would be damages excludable from gross income under section 104(a)(2). We agree with respondent that nothing in the record would support that claim.

Petitioner asserts that respondent should have conceded this case at the conclusion of trial but that respondent's counsel refused to do so, allegedly based on a posttrial ex parte communication with the Court. At the conclusion of trial, as reflected in the transcript, the Court directed respondent's counsel to brief cases dealing with settled or compromised claims. No off-the-record or ex parte communications between the Court and respondent's counsel have occurred. Respondent's brief discusses the evidence and case law supporting respondent's position. Petitioner has not complied with the Court's order or rules concerning briefs.

Petitioner has also complained that MBNA presumably received a deduction for the amount reported on Form 1099-C as income to petitioner. MBNA's tax liability is not before the Court. It is unnecessary, in any event, that a correlation exists between petitioner's income, as a cash basis taxpayer, and deductions of MBNA, presumably an accrual basis taxpayer. Other arguments and

assertions by petitioner are similarly irrelevant and lacking in merit.

<u>Decision will be entered under Rule 155.</u>